Barrow Manufacturing Company, Inc. v. Commissioner.Barrow Mfg. Co. v. CommissionerDocket No. 64773.United States Tax CourtT.C. Memo 1960-38; 1960 Tax Ct. Memo LEXIS 251; 19 T.C.M. (CCH) 195; T.C.M. (RIA) 60038; March 15, 1960*251 Held, that in each of the fiscal years in question, petitioner's profits were permitted to accumulate beyond the reasonable needs of its business and that petitioner was availed of in each of such years for the purpose of preventing the imposition of the surtax upon its shareholders. Section 102 of the Code of 1939. Petitioner, in 1950, purchased land and the building thereon primarily to acquire the land for plant expansion in the future. The building was demolished during the fiscal year ended June 30, 1953. Held, that the demolition of the building did not give rise to an allowable demolition loss under section 23(f) of the Code of 1939. Wilton H. Wallace, Esq., for the petitioner. Wallace M. Wright, Esq., for the respondent. FISHERMemorandum Findings of Fact and Opinion FISHER, Judge: This proceeding involves deficiencies in income tax determined by respondent as*253 follows: Year EndedDeficiency6-30-51$17,119.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,333.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,086.60The issues presented are as follows: (1) whether petitioner was availed of in each of the taxable years involved for the purpose of preventing the imposition of the surtax on its shareholders, and (2) whether petitioner sustained a deductible loss as a result of the demolition during the taxable year ended June 30, 1953, of a building situated on its property. Findings of Fact Some of the facts have been stipulated and are incorporated herein by reference. Barrow Manufacturing Company, Inc., (hereinafter referred to as petitioner), is a Georgia corporation, whose charter was granted on July 10, 1931. Its capital stock consists of 100 shares of issued common stock with a par value of $100 per share. Petitioner filed its income tax returns for the fiscal years ending June 30, 1951, 1952, and 1953, on an accrual basis. The original returns for the fiscal years ended June 30, 1951, and June 30, 1952, and an amended return for the fiscal year ended June 30, 1951, were filed with the then collector of internal revenue for the district of Georgia, Atlanta, Georgia. An amended*254 return for the year ended June 30, 1952, and the original return for the year ended June 30, 1953, were filed with the district director of internal revenue for the district of Georgia, Atlanta, Georgia. W. H. Jennings, Sr., was the founder of petitioner and was its president and general manager from its inception until he resigned on February 15, 1949, one month prior to his death. W. H. Jennings, Jr., was elected president on February 15, 1949, and continues to hold that office to the present time. During the taxable years ended June 30, 1951, 1952, and 1953, the outstanding capital stock of petitioner was owned by the following persons whose relationship to W. H. Jennings, Sr., the founder, is also indicated: ShareholderSharesRelationshipW. H. Jennings, Jr.4SonMrs. W. H. Jennings, Sr.61WifeMrs. S. F. Maughon15SisterS. F. Maughon15Brother-in-lawMrs. D. F. Thompson4DaughterNorman T. Camp1NonePetitioner's founder, in building up the business, maintained a conservative financial policy with an emphasis upon liquidity and financial independence. The officers of petitioner during each of the taxable years ended June 30, 1951, 1952, *255 and 1953, were as follows: "President and Treasurer W. H. Jennings, Jr. Vice President Mrs. W. H. Jennings, Sr. Vice President and Secretary Norman T. Camp" Petitioner is engaged in the garment manufacturing business, primarily producing sportswear, work clothing, pants, and shirts for wholesale trade. Its business is subject to seasonal fluctuations inherent in the garment manufacturing industry. During the years in question petitioner was able to purchase its materials on a tenday 3 per cent discount basis. The cash discounts earned thereby were as follows: FiscalYear EndedAmountJune 30, 1951$33,063.00June 30, 195229,589.34June 30, 195335,209.78Petitioner has from the beginning maintained minute books relating to meetings of stockholders and meetings of the board of directors. The minutes of meetings of the board of directors of petitioner, beginning with the meeting of March 3, 1947, and continuing until the meeting of June 30, 1951, refer to plans to build a larger and more modern plant. At the meeting of June 16, 1947, a qualified but "optimistic hope" of starting the building in early 1948 was expressed by the president. No*256 detailed plans were made, and no subsequent action date was determined. At the meeting of June 30, 1951, it was stated that putting up new buildings and engineering the factory were out of the question temporarily unless absolutely necessary, "and I do not consider them so, at least until we can get more for our money." The proposed new plant was never built. With respect to the use of plant engineers' services, reference is made at the meeting of February 20, 1950, to a report by the engineers claiming that they could reduce sewing costs. The estimated cost of the engineers' work was approximately $30,000 for the sewing department, but it was estimated that this amount would be saved in about a year's time. At the meeting of June 29, 1950, the question of having the sewing department engineered was "left undecided for now." At the meeting of June 30, 1951, it was stated that engineering of the factory was out of the question temporarily. At the meeting of March 19, 1956, the directors approved a contract with the plant engineers to engineer the pants department. Implementation of the engineering program began in 1956. The superintendent of petitioner's plant was very conservative*257 and had originally opposed the changes recommended by the plant engineers, but later was more receptive. The final decision to go ahead with the plant engineers' recommendations was made in 1956. No decision to adopt such recommendations was made in any of the years in question. Petitioner's only operating branch plant was a former warehouse in Statham, Georgia. The total cost of the Statham factory was as follows: Total cost prior to June 30, 1953$ 6,315.20Additional investment July 1, 1953 to June 30, 195825,264.78Total cost as of June 30, 1958 (including land, building,$31,579.98fixtures, and machinery)The town of Homer, Georgia, erected a building to be leased by petitioner. Due to business conditions, the Homer building was not utilized although some rent was paid by petitioner. Sales, inventories, accounts receivable, profit after taxes, dividends paid, capital years ended June 30, 1932, to June 30, 1958, inclusive, were as follows: Merchan-ProfitPerioddise In-AccountsAfterEndedSalesventoriesReceivableTaxes6-30-32$ 60,842.05$ 3,853.62$ 6,629.96$ 1,924.766-30-33112,686.729,246.4012,342.865,658.546-30-34205,012.4110,560.2520,420.7613,329.636-30-35205,524.6612,083.7717,086.782,950.976-30-36270,025.937,457.4829,377.6010,275.656-30-37472,243.8524,734.9831,512.8013,260.206-30-38350,375.6221,894.1540,225.414,024.376-30-39466,740.0132,220.5354,369.0410,773.416-30-40589,364.0840,279.0372,620.9818,905.196-30-41559,986.2993,380.5486,063.5921,583.576-30-42913,088.2797,787.7965,299.5146,448.146-30-43716,306.79103,728.2412,399.1932,276.466-30-44658,775.7092,131.5026,816.5526,321.526-30-45677,095.93100,593.4411,304.9632,245.166-30-46790,672.33200,751.4232,579.2637,460.136-30-471,358,028.7988,304.5511,544.24129,886.896-30-481,325,580.48123,982.1568,906.3456,395.586-30-491,445,762.60135,023.80109,267.7150,978.456-30-501,596,168.57166,179.07179,882.6684,793.596-30-511,838,677.83188,031.15211,175.3670,837.336-30-521,814,603.13206,853.62155,605.7039,066.986-30-532,165,814.38308,153.65284,884.7272,536.026-30-542,154,397.48201,614.21267,203.8630,701.636-30-551,920,568.60263,215.21309,913.0743,939.826-30-562,205,621.68315,562.56298,936.8110,528.306-30-571,686,945.85268,366.95283,819.39(20,789.95)6-30-581,861,680.03310,567.52307,081.0748,319.74*258 Capital StockPeriodDividendsCom-Pre-EndedPaidmonferredSurplus6-30-320$10,0000$ 1,924.766-30-33$ 500.0010,00007,117.836-30-34010,000020,447.466-30-35010,000023,398.436-30-36010,000033,674.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,000.0010,000$16,00030,934.286-30-387,000.0010,00022,00027,958.656-30-39010,00022,00038,832.066-30-405,640.0010,00022,00052,097.256-30-412,320.0010,00022,00071,360.826-30-423,820.0010,00022,000113,988.966-30-432,713.5610,00010,700143,551.866-30-441,081.5010,0000168,791.886-30-45600.0010,0000200,437.046-30-461,000.0010,0000236,897.186-30-473,000.0010,0000363,784.076-30-483,000.0010,0000417,179.656-30-493,000.0010,0000465,158.106-30-503,000.0010,0000546,951.696-30-517,000.0010,0000610,789.026-30-522,500.0010,0000647,356.006-30-534,000.0010,0000726,718.016-30-541,500.0010,0000757,419.646-30-55010,0000801,359.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,000.0010,0000811,887.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,000.0010,0000779,097.816-30-58010,0000839,043.14*259 Labor costs for the years ended June 30, 1947, to June 30, 1953, inclusive, were as follows: Fiscal Year EndedLaborIncreaseJune 30, 1947$201,031.29June 30, 1948206,309.86$ 5,278.57June 30, 1949224,903.8218,593.96June 30, 1950278,792.8853,889.06June 30, 1951316,931.5238,138.64June 30, 1952349,426.9832,495.46June 30, 1953407,058.6057,631.62Total increase 1947 through 1953$206,027.31The annual operating expenses for the years in question were as follows: Fiscal Year EndedAmountJune 30, 1951$457,741.19June 30, 1952507,069.78June 30, 1953592,847.93Petitioner borrowed operating funds from banks as follows: Date of NoteAmountDate PaidFebruary 1951$50,000May 1951July 31, 195325,000January 19, 1954August 26, 195340,000November 21, 1953 No other operating funds were borrowed during these years. Balance sheets of the corporation for the fiscal years ended June 30, 1947, to June 30, 1958, inclusive, are as follows: BARROW MANUFACTURING COMPANY, INC.WINDER, GEORGIABALANCE SHEETS FOR FISCAL YEARSENDED JUNE 30thASSETS1947194819491950Cash$255,545.54$137,730.01$ 47,399.43$ 35,070.53Accounts Receivable10,388.8468,753.41110,446.27179,599.28Advances [to] Employees100.00814.001,380.25268.50Inventories88,304.55123,982.15135,023.80166,179.07U.S. Bonds50,000.0050,000.0050,000.0050,000.00Federal Savings & Loan00100,000.00100,000.00Stock2,075.002,075.002,075.002,085.50Cash Value Life Insurance785.00970.001,380.001,795.00Airline Deposit425.000425.00425.00Total Current Assets$407,623.93$384,324.57$448,129.75$535,422.88Capital Assets$ 98,942.70$114,095.42$114,069.96$125,865.79Less - Depreciation Res.37,109.5429,420.2535,285.5941,165.01Net Capital Assets$ 61,833.16$ 84,675.17$ 78,784.37$ 84,700.78Other Assets$ 708.33$ 708.33$ 708.33$ 708.33Unexpired Insurance2,714.201,806.081,319.87653.11Total Assets$472,879.62$471,514.15$528,942.32$621,485.10LIABILITIESAccounts Payable$0$0$ 6,600.35$0Accrued Expense2,146.24326.6500Accrued Payroll605.742,267.977,000.000Accrued Taxes91,816.3137,507.2236,769.0862,780.82Taxes Withheld4,527.264,507.153,414.791,752.59Total Current Liabilities$ 99,095.55$ 44,608.99$ 53,784.22$ 64,533.41Capital Stock10,000.0010,000.0010,000.0010,000.00Surplus363,784.07416,905.16465,158.10546,951.69Total Liabilities andCapital$472,879.62$471,514.15$528,942.32$621,485.10*260 BARROW MANUFACTURING COMPANY, INC.WINDER, GEORGIABALANCE SHEETS FOR FISCAL YEARSENDED JUNE 30thASSETS1951195219531954Cash$ 39,516.09$123,659.95$ 14,514.56$118,450.24Accounts Receivable211,175.36155,605.70284,919.33267,203.86Advances [to] Employees15.00106.0082.00247.00Inventories188,031.15206,853.62308,153.65201,614.21U.S. Bonds50,000.0050,000.0050,000.0050,000.00Federal Savings & Loan100,000.00100,000.00100,000.00100,000.00Stock2,085.502,085.502,085.502,085.50Cash Value Life Insurance2,235.002,689.003,140.003,620.00Airline Deposit425.00425.00425.00425.00Total Current Assets$593,483.10$641,424.77$763,320.04$743,645.81Capital Assets$131,835.66$135,444.83$162,340.49$176,586.33Less - Depreciation Res.46,675.2753,772.8063,294.8173,426.98Net Capital Assets$ 85,160.39$ 81,672.03$ 99,045.68$103,159.35Other Assets$ 708.33$ 708.33$ 3,483.25$ 708,33Unexpired Insurance1,699.101,266.621,624.382,082.20Total Assets$681,050.92$725,071.75$867,473.35$849,595.69LIABILITIESAccounts Payable$ 613.53$ 7,481.07$ 59,628.81$ 37,026.44Accrued Expense01,605.3601,476.87Accrued Payroll00138.96400.85Accrued Taxes59,648.3755,325.4081,648.8643,271.89Taxes Withheld03,303.9200Total Current Liabilities$ 60,261.90$ 67,715.75$141,416.63$ 82,176.05Capital Stock10,000.0010,000.0010,000.0010,000.00Surplus610,789.02647,356.00716,056.72757,419.64Total Liabilities andCapital$681,050.92$725,071.75$867,473.35$849,595.69*261 BARROW MANUFACTURING COMPANY, INC.WINDER, GEORGIABALANCE SHEETS FOR FISCAL YEARSENDED JUNE 30thASSETS1955195619571958Cash$179,096.83$135,726.88$ 86,505.19$126,803.54Accounts Receivable309,913.07298,936.81283,819.39307,042.73Advances [to] Employees40.0060.0056.1738.34Inventories263,215.21315,562.56268,366.95310,567.52U.S. Bonds50,000.0050,000.0050,000.0050,000.00Federal Savings & Loan0000Stock2,085.502,085.502,085.502,085.50Cash Value Life Insurance3,915.003,915.003,915.003,915.00Airline Deposit425.00425.00425.00425.00Total Current Assets$808,690.61$806,711.75$695,173.20$800,877.63Capital Assets$180,374.78$177,800.97$183,135.84$181,437.98Less - Depreciation Res.85,382.8971,118.5682,033.2085,122.61Net Capital Assets$ 94,991.89$106,682.41$101,102.64$ 96,315.37Other Assets$ 708.33$ 708.33$ 708.33$ 708.33Unexpired Insurance1,190.642,276.302,023.901,844.87Total Assets$905,581.47$916,378.79$799,008.07$899,746.20LIABILITIESAccounts Payable$ 38,124.93$ 43,007.70$ 2,203.79$ 5,836.86Accrued Expense1,938.32000Accrued Payroll6,668.858,903.2500Accrued Taxes43,479.3136,861.423,613.0544,866.20Taxes Withheld4,010.605,718.664,093.420Total Current Liabilities$ 94,222.01$ 94,491.03$ 9,910.26$ 50,703.06Capital Stock10,000.0010,000.0010,000.0010,000.00Surplus801,359.46811,887.76779,097.81839,043.14Total Liabilities andCapital$905,581.47$916,378.79$799,008.07$899,746.20*262 These balance sheets disclose increases and decreases in assets and liabilities at the beginning and ending of fiscal years ended June 30, 1948, to June 30, 1958, inclusive, as follows: BARROW MANUFACTURING COMPANY, INC.WINDER, GEORGIASTATEMENT OF INCREASES AND DECREASESIN ASSETS AND LIABILITIES AT THE BEGINNINGAND ENDING OF THE FISCAL YEARS ENDEDINCREASE ORDECREASEJUNEJUNEJUNEASSETS11 YEARS30, 194830, 194930, 1950Cash[128,742.00)[117,815.53)$ (90,330.58)$ (12,328.90)Accounts Receivable296,653.8958,364.5741,692.8669,153.01Advances [to](61.66)714.00566.25(1,111.75)EmployeesInventories222,262.9735,677.6011,041.6531,155.27U.S. Bonds0000Federal Savings &00100,000.000LoanStock10.500010.50Cash Value Life Ins.3,130.00185.00410.00415.00Airline Deposit0(425.00)425.000Total Current Assets$ 393,253.70$ (23,299.36)$ 63,805.18$ 87,293.13Capital Assets$ 82,495.28$ 15,152.72$ (25.46)$ 11,795.83Depreciation Reserve48,013.07(7,689.29)5,865.345,879.42Net Capital Assets$ 34,482.21$ 22,842.01$ (5,890.80)$ 5,916.41Other Assets$0$0$0$0Unexpired Ins.(869.33)(908.12)(486.21)(666.76)Net Increase and$ 426,866.58$ (1,365.47)$ 57,428.17$ 92,542.78Decrease in AssetsLIABILITIESAccounts Payable$ 5,836.86[0)$ 6,600.35$ (6,600.35)Accrued Expense(2,146.24)(1,819.59)(326.65)0Accrued Payroll(605.74)1,662.234,732.03(7,000.00)Accrued Taxes(46,950.11)(54,309.09)(738.14)26,011.74Taxes Withheld(4,527.26)(20.11)(1,092.36)(1,622.20)Total Current$ (48,392.49)$ (54,486.56)$ 9,175.23$ 10,749.19LiabilitiesCapital Stock0000Surplus475,259.0753,121.0948,252.9481,793.59Net Increase or$ 426,866.58$ (1,365.47)$ 57,428.17$ 92,542.78Decrease inLiabilities & NetWorth*263 BARROW MANUFACTURING COMPANY, INC.WINDER, GEORGIASTATEMENT OF INCREASES AND DECREASESIN ASSETS AND LIABILITIES AT THE BEGINNINGAND ENDING OF THE FISCAL YEARS ENDEDJUNEJUNEJUNEJUNEASSETS30, 195130, 195230, 195330, 1954Cash$ 4,445.56$ 84,143.86[109,145.39)$ 103,935.68Accounts Receivable31,576.08(55,569.66)129,313.63(17,715.47)Advances [to](253.50)91.00(24.00)165.00EmployeesInventories21,852.0818,822.47101,300.03(106,539.44)U.S. Bonds0000Federal Savings &0000LoanStock0000Cash Value Life Ins.440.00454.00451.00480.00Airline Deposit0000Total Current Assets$ 58,060.22$ 47,941.67$ 121,895.27$ (19,674.23)Capital Assets$ 5,969.87$ 3,609.17$ 26,895.66$ 14,245.84Depreciation Reserve5,510.267,097.539,522.0110,132.17Net Capital Assets$ 459.61$ (3,488.36)$ 17,373.65$ 4,113.67Other Assets$0$0$ 2,774.92$ (2,774.92)Unexpired Ins.1,045.99(432.48)357.76457.82Net Increase and$ 59,565.82$ 44,020.83$ 142,401.60$ (17,877.66)Decrease in AssetsLIABILITIESAccounts Payable$ 613.53$ 6,867.54$ 52,147.74$ (22,602.37)Accrued Expense01,605.36(1,605.36)1,476.87Accrued Payroll00138.96261.89Accrued Taxes(3,132.45)(4,322.97)26,323.46(38,376.97)Taxes Withheld(1,752.59)3,303.92(3,303.92)0Total Current$ (4,271.51)$ 7,453.83$ 73,700.88$ (59,240.58)LiabilitiesCapital Stock0000Surplus63,837.3336,566.9868,700.7241,362.92Net Increase or$ 59,565.82$ 44,020.83$ 142,401.60$ (17,877.66)Decrease inLiabilities & NetWorth*264 BARROW MANUFACTURING COMPANY, INC.WINDER, GEORGIASTATEMENT OF INCREASES AND DECREASESIN ASSETS AND LIABILITIES AT THE BEGINNINGAND ENDING OF THE FISCAL YEARS ENDEDJUNEJUNEJUNEJUNEASSETS30, 195530, 195630, 195730, 1958Cash$ 60,646.59$ (43,369.95)$ (49,221.69)$ 40,298.35Accounts Receivable42,709.21(10,976.26)(15,117.42)23,223.34Advances [to](207.00)20.00(3.83)(17.83)EmployeesInventories61,601.0052,347.35(47,195.61)42,200.57U.S. Bonds0000Federal Savings &(100,000.00)000LoanStock0000Cash Value Life Ins.295.00000Airline Deposit0000Total Current Assets$ 65,044.80$ (1,978.86)[111,538.55)$ 105,704.43Capital Assets$ 3,788.4$ (2,573.81)$ 5,334.87$ (1,697.86)Depreciation Reserve11,955.91(14,264.33)10,914.643,089.41Net Capital Assets$ (8,167.46)$ 11,690.52$ (5,579.77)$ (4,787.27)Other Assets$0$0$0$0Unexpired Ins.(891.56)1,085.66(252.40)(179.03)Net Increase and$ 55,985.78$ 10,797.32[117,370.72)$ 100,738.13Decrease in AssetsLIABILITIESAccounts Payable$ 1,098.49$ 4,882.77$ (40,803.91)$ 3,633.07Accrued Expense461.45(1,938.32)00Accrued Payroll6,268.002,234.40(8,903.25)0Accrued Taxes207.42(6,617.89)(33,248.37)41,253.15Taxes Withheld4,010.601,708.06(1,625.24)(4,093.42)Total Current$ 12,045.96$ 269.02$ (84,580.77)$ 40,792.80LiabilitiesCapital Stock0000Surplus43,939.8210,528.30(32,789.95)59,945.33Net Increase or$ 55,985.78$ 10,797.32[117,370.72)$ 100,738.13Decrease inLiabilities & NetWorth*265 Additional Federal income taxes, which were not disclosed as a liability in the balance sheets as of June 30, 1950, and June 30, 1951, were paid during the year ended June 30, 1952, as follows: Fiscal Year EndedAmountJune 30, 1948$5,225June 30, 19492,945June 30, 19511,535Total$9,705Balance sheets of petitioner at the close of each quarter of the period between March 31, 1951, and December 31, 1953, inclusive, are as follows: BARROW MANUFACTURING COMPANY, INC.WINDER, GEORGIABALANCE SHEETSASSETS3/31/516/30/519/30/5112/31/51Cash in Banks[21,613.57)$ 39,516.09$ 3,839.66$127,734.84Accounts Receivable240,483.83211,190.36250,280.63151,780.85Inventories264,901.44188,031.15196,923.94199,538.31U.S. Bonds50,000.0050,000.0050,000.0050,000.00Federal Savings & Loan100,000.00100,000.00100,000.00100,000.00DepositsStock So. Life Ins. Co.2,085.502,085.502,085.502,085.50Cash Value Life Ins.1,795.002,235.002,235.002,235.00Deposit Airline425.00425.00425.00425.00Accrued Interest0208.3300Total Current Assets$638,077.20$593,691.43$605,789.73$633,799.50Fixed Assets$126,760.80$126,688.48$126,693.48$127,684.85Depreciation Reserve47,928.5146,675.2748,842.1250,327.79Net Fixed Assets$ 78,832.29$ 80,013.21$ 77,851.36$ 77,357.06Deposit on EquipmentReal Estate$ 5,147.18$ 5,147.18$ 5,147.18$ 5,147.18Goodwill500.00500.00500.00500.00Prepaid Insurance01,699.101,699.100Total Assets$722,556.67$681,050.92$690,987.37$716,803.74Bank OverdraftAccounts Payable$0$ 613.53$0$ 84.04Notes Payable50,000.00000Accrued Taxes - Income Tax64,655.5057,218.1762,087.6166,254.00Other3,204.032,430.203,733.712,798.01Accrued Expense0000Accrued Payroll0000Withholding Tax2,392.90000Total Current Liabilities$120,252.43$ 60,261.90$ 65,821.32$ 69,136.05Capital Stock10,000.0010,000.0010,000.0010,000.00Surplus592,304.24610,789.02615,166.05637,667.69Total Liabilities and$722,556.67$681,050.92$690,987.37$716,803.74Capital*266 ASSETS3/31/526/30/529/30/5212/31/52Cash in Banks$ 91,900.49$123,659.95$ 69,135.84$122,016.17Accounts Receivable237,446.42155,711.70309,884.47274,166.69Inventories159,494.01206,853.62204,245.58123,817.36U.S. Bonds50,000.0050,000.0050,000.0050,000.00Federal Savings & Loan100,000.00100,000.00100,000.00100,000.00DepositsStock So. Life Ins. Co.2,085.502,085.502,085.502,085.50Cash Value Life Ins.2,235.002,689.002,689.002,689.00Deposit Airline425.00425.00425.00425.00Accrued Interest0208.3300Total Current Assets$643,586.42$641,633.10$738,465.39$675,199.72Fixed Assets$130,767.96$130,297.65$128,968.99$132,365.36Depreciation Reserve54,359.6353,772.8055,794.8657,887.58Net Fixed Assets$ 76,408.33$ 76,524.85$ 73,174.13$ 74,477.78Deposit on EquipmentReal Estate$ 5,147.18$ 5,147.18$ 5,147.18$ 5,147.18Goodwill500.00500.00500.00500.00Prepaid Insurance01,266.621,266.620Total Assets$725,641.93$725,071.75$818,553.32$755,324.68LIABILITIESBank OverdraftAccounts Payable$0$ 7,481.07$ 81,951.01$ 2,198.79Notes Payable0000Accrued Taxes - Income Tax68,786.5651,797.2439,645.6340,248.01Other2,629.413,528.164,990.573,608.13Accrued Expense01,605.368,972.800Accrued Payroll0007,038.38Withholding Tax3,994.113,303.923,556.700Total Current Liabilities$ 75,410.08$ 67,715.75$139,116.71$ 53,093.31Capital Stock10,000.0010,000.0010,000.0010,000.00Surplus640,231.85647,356.00669,436.61692,231.37Total Liabilities and Capital$725,641.93$725,071.75$818,553.32$755,324.68*267 ASSETS3/31/536/30/539/30/5312/31/53Cash in Banks$ 13,427.61$ 14,514.56$0$176,443.12Accounts Receivable288,129.45285,001.33388,054.41221,411.31Inventories249,507.63308,153.65332,536.38178,704.83U.S. Bonds50,000.0050,000.0050,000.0050,000.00Federal Savings & Loan100,000.00100,000.00100,000.00100,000.00DepositsStock So. Life Ins. Co.2,085.502,085.502,085.502,085.50Cash Value Life Ins.2,689.003,140.003,140.003,140.00Deposit Airline425.00425.00425.00425.00Accrued Interest0208.3300Total Current Assets$706,264.19$763,528.37$876,241.29$732,209.76Fixed Assets$135,137.48$156,693.31$167,881.74$168,476.02Depreciation Reserve62,459.2163,294.8166,117.3869,302.08Net Fixed Assets$ 72,678.27$ 93,398.50$101,764.36$ 99,173.94Deposit on Equipment$ 2,774.92$ 5,647.18$ 5,647.18Real Estate$ 5,147.185,647.18Goodwill500.00500.00500.00500.00Prepaid Insurance01,624.381,624.380Total Assets$784,589.64$867,473.35$985,777.21$837,530.88LIABILITIESBank Overdraft$ 4,923.77Accounts Payable$ 1,744.05$ 59,628.8164,727.14$0Notes Payable0065,000.0025,000.00Accrued Taxes - Income Tax56,298.2873,702.0071,613.6049,138.01Other2,720.733,918.135,093.283,457.97Accrued Expense0000Accrued Payroll0138.969,761.61244.60Withholding Tax4,246.174,028.734,492.440Total Current Liabilities$ 65,009.23$141,416.63$225,611.84$ 77,840.58Capital Stock10,000.0010,000.0010,000.0010,000.00Surplus709,580.41716,056.72750,165.37749,690.30Total Liabilities and Capital$784,589.64$867,473.35$985,777.21$837,530.88*268 Petitioner's receivables were payable in 30 days in accordance with the standard of many years in the industry. On or about November 1, 1946, petitioner invested $50,000 in 2 1/2 per cent U.S. Savings Bonds, Series "G". These bonds were held continuously by petitioner up to and including June 30, 1953. On or about February 17, 1949, petitioner acquired shares in 20 different Federal savings and loan associations in the total amount of $100,000. This amount remained invested in savings and loan shares up to and including June 30, 1953. Petitioner's experience with bad debts and recoveries of bad debts previously deducted was as follows: Bad DebtsBad Debt Re-Net Bad DebtYear Ended June 30DeductedcoveriesLosses1951 (Amended Return)$2,175.87$107.13$2,068.741952 (Amended Return)855.43222.03633.401953None148.22(148.22)Totals$3,031.30$477.38$2,553.92Petitioner's stockholders would have incurred an additional personal income tax liability for the years 1951, 1952, and 1953, had the corporation distributed all of its earnings and profits for those years in the form of dividends. The additional liability which would*269 have been incurred by the individual stockholders as a result of such a distribution is as follows: Additional Income Tax195119521953Mrs. W. H. Jennings, Sr.$21,650.18$16,505.58$26,603.31Mr. & Mrs. S. F. Maughon5,518.604,223.727,066.66W. H. Jennings, Jr.951.26701.221,132.98Mrs. D. F. Thompson504.56476.66674.38Norman T. Camp244.02193.76328.97$28,868.62$22,100.94$35,806.30Petitioner, under section 534(c) and (e) of the Code of 1954, submitted a statement of the grounds (together with facts intended to show the basis thereof) on which petitioner relies to establish that no part of the earnings and profits have been permitted to accumulate beyond the reasonable needs of the business. Petitioner's earnings or profits were permitted to accumulate beyond the reasonable needs of its business in each of the fiscal years involved. On April 5, 1950, petitioner purchased a lot on which a tenant house was situated. This property was adjacent to certain unimproved real estate already owned by petitioner. The purchase price of this property was $2,500, of which petitioner allocated $2,275 to the cost of the*270 building, and $225 to the cost of the land. Rental receipts from this tenant building were as follows: Year endedRental6-30-50$ 52.506-30-51284.606-30-52307.006-30-53NoneThe building was demolished by petitioner in 1953. Depreciation claimed up to date of demolition amounted to $341.26 computed on the basis of a 20-year life. Salvage realized from the building was $375. Petitioner's purpose, at the time of purchase, in acquiring this property was to enlarge the tract of land already held, adjacent thereto, on the Atlanta highway. Petitioner purchased said land and the building thereon which it demolished in 1953 with the intention of razing said building and using the land as part of a suitable site for plant expansion. Opinion Issue I The first issue before us is whether petitioner was availed of during the fiscal years ended June 30, 1951, 1952, and 1953, for the purpose of preventing the imposition of additional income taxes upon its shareholders through the medium of permitting its earnings and profits to accumulate instead of being divided or distributed. 1*271 The primary question is whether petitioner permitted its earnings to accumulate beyond the reasonable needs of the business under section 102(c) of the 1939 Code. The question of whether the accumulation of earnings and profits was reasonable is a question of fact to be resolved by the Court from all of the evidence, giving consideration to all of the material circumstances surrounding the accumulations by the petitioner. (C.A. 10, 1948), affirming , (N.D. Okla. 1947), certiorari denied , rehearing denied ; (W.D., N. Y. 1946), affd. , rehearing denied ; (C.A. 7, 1942); affd. (C.A. 7, 1958), certiorari denied . In giving consideration to problems of this type, we are, of course, slow to substitute*272 our judgment for that of the management of the taxpayer. On the other hand, petitioner is a closely held family corporation, and we must scrutinize all of the circumstances carefully in determining whether or not the surtax under section 102 is to be applied. In this connection, consideration must be given to the over-all financial condition of petitioner. Among other circumstances, we note that for the years in question, petitioner's profits after taxes, dividends paid, and retained earnings were as follows: FiscalProfitYearAfterDivi-RetainedEndedTaxesdendsEarnings6/30/51$ 70,837.33$ 7,000$ 63,837.336/30/5239,066.982,50036,566.986/30/5372,536.024,00068,536.02Total$182,440.33$13,500$168,940.33Surplus as of the end of the respective years referred to above was $610,789.02; $647,356, and $726,718.01. Balance sheets of petitioner beginning with June 30, 1947, and continuing through June 30, 1958, disclose among its assets $50,000 face value of U.S. Bonds. Beginning as of June 30, 1949, and continuing through June 30, 1954, said balance sheets disclose $100,000 of deposits in Federal savings and loan associations. *273 During the years in which petitioner held such assets, totaling $150,000, (including the years here in question), no part of said $150,000 was implemented into the active conduct of petitioner's business. Petitioner's borrowing from banks, and repayments, were as follows: Date of NoteAmountDate PaidFebruary 1951$50,000May 1951July 31, 195325,000January 19, 1954August 26, 195340,000November 21, 1953In the absence of special circumstances, it is apparent that the reasonable needs of petitioner's business would not have required the retention of the substantial earnings which it in fact retained in the years in question, and that petitioner would have been in a position, without harm to itself, to have distributed as dividends amounts substantially in excess of the less than 10 per cent of profits after taxes which it actually distributed. Petitioner contends that there were numerous circumstances which justified such retention of earnings, and we now consider those contentions. Petitioner's main contention is that it intended to erect a new, modern plant suitable to its needs, and that it accumulated earnings in order to reduce whatever*274 borrowing might be necessary when the plan was put into effect. We have no doubt, after examining the directors' minutes, and upon consideration of the testimony of W. H. Jennings, Jr., that petitioner had in mind some such generalized plan. Moreover, petitioner, in 1950, bought the adjoining property for the modest sum of $2,500, intending to use the land as part of the situs of the future plant together with the property it already owned. Nevertheless, the plan was quite general, not only as to the type of plant, but also as to the time of implementation, which was quite indefinite, and not within the reasonably calculable future. At the time of trial, (April 1959), no steps toward implementation were begun or decided upon. It is our view that such a vague, generalized project, with no definite plan, and no substantial active move toward implementation, can not be taken to create a reasonable need of a business to accumulate 90 per cent or more of its earnings after taxes for at least three years and, as indicated in the record before us, an indefinite period thereafter. See (On appeal C.A. 2); ,*275 affd. (C.A. 2, 1960). , certiorari denied . (1949), rehearing denied . The next contention pressed by petitioner is the project for greater plant efficiency proposed by specialists in plant engineering. Here, however, the record clearly shows that the problem was not significantly one of accumulating liquid funds in the years in question. The reason for not proceeding was the opposition of the plant superintendent, who was very conservative, not open to modern ideas and afraid that the results might be harmful. Moreover, the project to reduce sewing costs, considered in 1950, would have required an outlay of only about $30,000, and the plant engineers estimated that this amount would be recouped in about a year's time because of the saving to be effected. The 1956 project was more elaborate and more expensive, but was not decided upon until that year. It was not planned in any of the years in question, and in none of those years could have formed the basis for accumulation of the substantial earnings retained. It is to be remembered, *276 also, that petitioner, in those years, had very substantial surpluses, including the "cushion" of $100,000 in cash deposits in building and loan associations, and $50,000 in Government bonds. Petitioner lays stress upon the conservative views of William H. Jennings, Sr., who founded the business. He died in 1947, and was succeeded as president by his son, William H. Jennings, Jr. The father instilled in his son the principles of conservatism, including the view that there should be no unnecessary borrowing of funds and that the business should be built up and expanded with current earnings. This is a factor to be considered in relation to the bona fides of the use of business judgment to the extent that this may be significant in the particular case, and we give consideration to it accordingly. On the issue of the reasonable needs of the business, however, we see no occasion to adopt one rule for the ultra-conservative and another for those less conservative. Petitioner also emphasizes various business hazards including the following: that its business is a seasonal one; that it is necessary to purchase piece goods at contract prices several months in advance of the season with*277 the consequent risk of market changes; that its receivables, inventories, and labor costs were increasing; that it was necessary to meet competition., and that the Korean War and inflationary trends presented problems. All of the foregoing are factors to be considered in assessing the over-all picture. At the same time, they are hazards faced by business in general. Increased costs and expenses are normally balanced by increased selling prices and competitors normally face the same problems. In any event, the fact that petitioner adequately met the various financial problems it faced is demonstrated by the fact that in every fiscal year from that ending June 30, 1948, through June 30, 1956, and in the fiscal year ending June 30, 1958, its surplus increased. In the fiscal year ending June 30, 1957, its surplus decreased in the amount of $32,789.95. As of June 30, 1947, it had built up a surplus of $363,784.07, from an original capital of $10,000, and a surplus of $1,924.76, as of June 30, 1932. Examination of all of the financial data submitted satisfies us that the reasonable needs of the business in these respects did not require the accumulation of all of the more than 90 per cent*278 of earnings, after taxes, retained in the years in question. Petitioner points out the benefits of discounting its bills, and the substantial income attributable thereto. We, of course, agree, but our analysis of the financial data applicable to the three years in question satisfies us that petitioner was in a position to discount its bills in those years without the use of a substantial part of the earnings accumulated in such years. Upon the basis of the foregoing discussion, and upon consideration of the entire record, we conclude that petitioner, in each of the years in question, permitted its earnings to accumulate beyond the reasonable needs of the business. Petitioner points to the fact that it filed a statement of grounds and the facts intended to show the basis therefore, under section 534(c) and (e) of the 1954 Code, and urges that the burden of proof therefore rests with respondent to prove that it permitted its earnings to accumulate beyond the reasonable needs of the business. We have assumed, arguendo, throughout our discussion, that the burden of proof lay with the respondent. Our conclusions, however, are based upon and supported by the affirmative facts in the*279 record, so that the burden of proof on the issue is not a significant factor. It is unnecessary, therefore, for us to consider the sufficiency of petitioner's statement of grounds and statement of facts in support thereof. Having held that in each of the years in question, petitioner permitted its earnings to accumulate beyond the reasonable needs of the business, we must determine, under the provisions of section 102(a) and (c) of the 1939 Code, that petitioner was availed of for the purpose of preventing the imposition of the surtax upon its shareholders unless petitioner, by the clear preponderance of the evidence, shall have proved to the contrary. We think it is clear that petitioner has not met this burden, and we, therefore, hold for the respondent on this issue. Issue II Petitioner claims that it incurred a deductible loss of $1,558.74 in 1953 when it voluntarily demolished a building which it had purchased in 1950 and had rented to tenants. The general rule is that a demolition loss, not compensated for by insurance or otherwise, sustained by a corporation during the taxable year is deductible under section 23(f) of the Code of 1939. This rule, however, is not applicable*280 in cases where property is bought with the intent to raze the buildings and construct new buildings. ; ; Reg. 118, secs. 39.23(f)-1 and 39.23(e)-2. The minutes of petitioner's meetings of March 9, and June 29, 1950, and the testimony of W. H. Jennings, Jr., clearly show that petitioner purchased the property in order to secure land adjacent to land it already owned with the intention at some time in the future to build a new plant on the combined land. In order to do so, it was necessary at some time to raze the building. That the time at which petitioner intended to build the new plant was in the indefinite future is immaterial. That the plan to build the new plant was abandoned (if it was abandoned) is likewise immaterial. We add that it is obvious from the record that petitioner did not buy the property to get the benefit of the meagre and profitless rents referred to in our Findings of Fact. We, accordingly, sustain respondent's determination. Decision will be entered under Rule 50. Footnotes1. SEC. 102. SURTAX ON CORPORATIONS IMPROPERLY ACCUMULATING SURPLUS. (a) Imposition of Tax. - There shall be levied, collected, and paid for each taxable year (in addition to other taxes imposed by this chapter) upon the net income of every corporation (other than a personal holding company as defined in section 501 or a foreign personal holding company as defined in Supplement P) if such corporation, however created or organized, is formed or availed of for the purpose of preventing the imposition of the surtax upon its shareholders or the shareholders of any other corporation, through the medium of permitting earnings or profits to accumulate instead of being divided or distributed, a surtax equal to the sum of the following: 27 1/2 per centum of the amount of the undistributed section 102 net income not in excess of $100,000, plus 38 1/2 per centum of the undistributed section 102 net income in excess of $100,000. * * *(c) Evidence Determinative of Purpose. - The fact that the earnings or profits of a corporation are permitted to accumulate beyond the reasonable needs of the business shall be determinative of the purpose to avoid surtax upon shareholders unless the corporation by the clear preponderance of the evidence shall prove to the contrary.↩